IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION
COLUMBUS, OHIO

| | | |
|---|---|---|
| **LINDA NOURI**, <br> *Plaintiff*, <br> vs. <br><br> **OHIO ATTORNEY GENERAL DAVID ANTHONY YOST (Official Capacity)** <br> **HAMILTON COUNTY RECORDER SCOTT CROWLEY** <br> **HON. TERRY NESTOR (Official Capacity)** <br> **MAGISTRATE ANITA BERDING (Official Capacity)** <br> **MAGISTRATE THOMAS BERIDON (Official Capacity)** <br><br> *Defendants*. | : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : <br> : | **Case No.** <br><br> **Judge** <br><br> **COMPLAINT FOR DECLARATORY JUDGMENT AND INJUNCTIVE RELIEF** <br><br> **Jury Demand Endorsed Hereon** <br><br> **HEARING REQUESTED** |

Pursuant to 42 U.S.C. § 1983, Plaintiff Linda Nouri *Pro Se*, submits this complaint respectfully requesting Declaratory Judgment that provisions of Ohio Rev. Code §5311 entitled "Condominium Property" ("Condo Act") deprives people within the jurisdiction of the United States – including Ms. Nouri – rights, privileges, and immunities secured by the U.S. Constitution and federal laws. Accordingly, Ms. Nouri seeks injunctive relief to enjoin the enforcement of the Condo Act.

Pursuant to 28 U.S.C. §1367, Ms. Nouri respectfully requests Declaratory Judgment that O.R.C. §5311.18(6) violates Article IV, Section 5(B) of the Ohio Constitution by legislating court procedure and proceedings. Ms. Nouri seeks injunctive relief to enjoin the Condo Act's enforcement.

## MEMORANDUM OF LAW

At the heart of this case, this is about a statute enacted in Ohio that flouts both the U.S. Constitution and the Ohio Constitution. And while intent is not an element of Section 1983 claims, it should frame the picture of this case. While other jurisdictions have chosen to comport with the long history of case law regarding prejudicial liens, the State of Ohio and the Attorney General's office stand against what has already been decided regarding what is necessary to meet Due Process under both Constitutions.

This case is simple, the United States Supreme Court has time, and time, and time again held that prejudicial liens require procedural safeguards to be considered constitutional. O.R.C. 5311 meets none of those safeguards. And what's more, O.R.C. 5311 was amended to further deprive condominium owners any opportunity to be heard where it under 5311.18(b)(6) proscribes defendants defenses, counterclaims, and crossclaims.

## PARTIES

1. Plaintiff Linda Nouri ("Ms. Nouri") is of the age of majority, and a resident of Hamilton County, Ohio.

2. Defendant David Anthony Yost is the Attorney General of Ohio ("AG"), the State's Chief Legal Officer. As Ohio's Chief Legal Officer, AG Yost is the state official responsible for enforcing the Condo Act. The office of Attorney General of Ohio at 30 E. Broad St., 14th Floor, Columbus, Ohio 43215.

3. Defendant Hamilton County Recorder Scott Crowley is the county official responsible for the office in which the prejudicial liens are filed. When the Recorder's office files the lien, it is state action.

4. Defendant, Terry Nestor is a judge of the Hamilton County Court of Common Pleas. Judge Nestor is assigned as the presiding judge over Ms. Nouri's civil case.

5. Defendant Anita Berding is a Chief Magistrate at the Hamilton County Court of Common Pleas. Magistrate Berding presided over Ms. Nouri's civil case. Her name remains assigned on the docket of Ms. Nouri's foreclosure case.

6. Defendant Thomas Beridon is a Chief Magistrate at the Hamilton County Court of Common Pleas. Magistrate Berding presided over the last two hearings in Ms. Nouri's foreclosure case, subsequent to Magistrate Berding's being served in this above captioned case. Ms. Nouri anticipates Magistrate Beridon to deliver a finding of facts and conclusions of law to a Summary Judgment Decision for foreclosure against Ms. Nouri.

## JURISDICTION

**PERSONAL JURISDICTION**

The Federal District Court of Ohio has *in personum* jurisdiction over each defendant as each and every defendant has a presence in this forum state. *See* "PARTIES" *Supra*.

Generally, judges are immune from liability for monetary relief for their "judicial acts" provided they do not act in the "clear absence of all jurisdiction." Section 1983 Litigation, Volume 1B, §9.3, Pgs.208-24 (Third Edition). However, it has long-since been held that "[j]udicial immunity does not… extend to prospective relief." *Id*. at Pg. 208 (citing *Pulliam v. Allen*, 466 U.S. 522 (1984)). In *Pulliam*, the respondents "were arrested for nonjailable misdemeanors," *Pulliam* at Syllabus. A magistrate imposed bail, but the respondents were unable to pay and the magistrate sent them to jail. *Id*. The respondents brought a §1983 action claiming the Magistrate's practice of imposing bail on arrested individuals for nonjailable offenses and subsequently jailing them if they could not meet bail was unconstitutional. The

Court held that there "never has been a rule of absolute judicial immunity from prospective relief, and there is no evidence that the absence of that immunity" would have a "chilling effect on judicial independence." *Pulliam* at 522. The Supreme Court ruled that judicial immunity does not extend to claims for "prospective injunctive relief against a judicial officer acting in her judicial capacity," or to a claim for attorney's fees under the Civil Rights Attorney's Fees Award Act.[1] Section 1983 Litigation, at Pg. 222.

Here where Ms. Nouri simply asks for prospective injunctive relief from the judicial defendants, neither is immune and this court has the appropriate jurisdiction over them.

**SUBJECT MATTER JURISDICTION**

28 U.S.C. §1331 provides that the federal district courts have original jurisdiction in "all civil actions arising under the Constitution, laws, or treaties of the United States." This case presents civil actions involving the Plaintiff's rights, privileges, and immunities protected by the U.S. Constitution and federal law. Therefore, the federal district court has original jurisdiction over this case.

This Court has jurisdiction pursuant to 28 U.S.C. §1343, which confers original jurisdiction to federal district courts for any civil action authorized by law that seeks "redress [for] the deprivation, under color of any State law, statute, ordinance, regulation, custom or usage, of any right, privilege or immunity secured" §1343(a)(3) by the U.S. Constitution or U.S. Civil Rights Statute. See also §1343(a)(4). Where Ms. Nouri is seeking redress for the violation of her federally protected rights under the Constitution and U.S. law, pursuant to 42 U.S.C. § 1983, the federal district court has original jurisdiction.

Declaratory and injunctive relief is authorized by 28 U.S.C. §§ 2201 and 2202.

---

[1] 42 U.S.C. §1988.

**SUPPLEMENTAL JURISDICTION**

Where Ms. Nouri is seeking for this court to exercise supplemental jurisdiction over her claim regarding Ohio State Constitution, 28 U.S.C. §1367 expressly states that "district courts shall have supplemental jurisdiction over all other claims that are so related to the claims in the action within such original jurisdiction that they form part of the same case or controversy." In the present case, the federal district court has original jurisdiction over Ms. Nouri's civil rights claims regarding O.R.C. §5311. Ms. Nouri' State claims are – as §1367 calls for – closely related. The federal and state claims arise out of a "common nucleus of operative fact[s]" where, but for the facts related to their respective constitutions, the facts are identical. *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966). Therefore, they arise from the same transaction or occurrence.

While the district court in its discretion may decline to exercise supplemental jurisdiction over Ms. Nouri's state law claims, she respectfully asks the court to do so given that **(1)** this court may not need to reach the questions of the state law claims where Ms. Nouri's federal claims may be dispositive; **(2)** Ms. Nouri's issues raised in the state claims are neither novel nor are they complex. There is long-standing Ohio Supreme Court case law squarely on point for both issues; **(3)** supplemental jurisdiction here greatly promotes judicial economy and efficiency; **(4)** and where it promotes judicial economy and efficiency, it also promotes fairness to the litigants.

## **VENUE**

Venue is proper in the Columbus Court pursuant to 28 U.S.C. § 1391(b) because the events giving rise to the enactment of the statute at issue occurred in Franklin County in the Southern District of Ohio, the Attorney General of Ohio's office is in Franklin County.

## STATEMENT OF FACTS

**FACTS AS RELATED TO STATUTES**

1. Ohio statutorily sanctioned the creation of condominiums and condominium ownership in 1963 by enacting the Condominium Property Act ("Act".) ORC §§ 5311.01-.22.

2. This Act regulates: (a) the creation of a condominium property; (b) the rights, interests, and obligations of the individual owners; (c) the administration/governance of the property by an Association; (d) the rights, authorities, interests, and obligations of the Association; (e) the rights, authorities, interests, and obligations of creditors and/or lienors; and (f) the dissolution/removal of the property from the Act. §§ 5311.01-.27.

3. A condominium purchaser buys two types of real property: (a) a "Unit" (i.e. specific dwelling) to which the Unit Owner has individual and unique ownership in fee-simple; and (b) joint title as a tenant in common with undivided interest to land upon which her unit is located along with any other land and/or dwellings that may serve the Unit. *An Examination of the Current Ohio Condominium Law* by Patricia McQuillen Billow, Pg. 119; ORC §§ 5311.01[2], 5311.03, 5311.04; *See* Baldwin's Ohio Condominium Law by Kenton L. Kuehle and Charles T. Williams, 2020-2021 Edition, Pg.1.]

4. The property that Unit Owners share as tenants in common are called "common element(s)," and/or "common area(s)." §§ 5311.01, 5311.04.

5. To manage the administration of the condominium property, each Condominium development is required to form a Unit Owners' Association. §§ 5311.01, 5311.08.

---

[2] There is a second type of ownership interest that pertains to leasehold condominiums, but that definition does not apply to the property at issue, therefore the fee-simple ownership example is offered here. Ms. Nouri's condominium property is owned in fee simple.

6. A Unit Owners' Association operation is governed by both the property and corporation laws of Ohio. The instruments that steer their operation include: (a) their Articles of Incorporation; (b) the property's Declaration; and (c) the property's By-Laws. §§ 5311.01-.27; 1701; 1702.

7. Through a "Declaration" that is filed with the County Recorder's Office, the Unit Owners contract with one another to pay a proportion of the common costs/expenses required to administer and maintain the property they own, use, and enjoy as tenants-in-common. §§ 5311.01(D, F, H), 5311.03(G), 5311.04(F), 5311.08(B)(5), 5311.09(A), 5311.14(A), 5311.15, 5311.16, 5311.18(A,C), 5311.21, 5311.25(F), 5311.26(F).

8. Not all costs are common (i.e. shared) and chargeable proportionately across the Unit Owners. §§5311.01(D, F, H), 5311.03(G), 5311.04(F), 5311.08(B)(5), 5311.09(A), 5311.14(A), 5311.15, 5311.16, 5311.18(A,C), 5311.21, 5311.25(F), 5311.26(F).

9. A Unit Owners' Association uses "assessments" to charge individual Unit Owners their portion of the property's operational costs/expenses. There are two kinds of assessments: (1) Common assessments are charged proportionately to the Unit Owners as tenants in common for their share of the expenses used for common (i.e. shared) purposes as related to their property; [§5311.01; §5311.21] and (2) Special Assessments are those costs charged to specific Unit Owners for any fees, charges, or costs applicable to their specific Unit that is not part of the common assessments. *See* §§ 5311.01 (G); 5311.19.

10. The Act allows for Unit Owners' Associations to place a prejudgment lien upon a Unit for "failure" to pay timely assessments. The 2002 version of the statute required the lien be subscribed by the President or other chief officer of the Association, presumably someone with first-hand knowledge of the facts. However, the current version allows for a

designated representative of the association. Someone who may or may not have first-hand knowledge of the facts. The statute is also silent on who designates the representative, and whether or not designation requires a vote by either the Association's Board or members of the Association. *Compare* §5311.18 (2002) to 5311.18 (current).

11. The COA's lien is an attachment. *Compare* to definition of attachment "The seizing of a person's property to secure a judgment or to be sold in satisfaction of a judgment." *Black's Law Dictionary*, Tenth Edition, Brian Garner Editor.

12. In 1980 the Ohio Supreme Court stated that statutes providing for prejudgment attachment must meet a minimum of five requirements in order to be considered constitutional. *Peebles v. Clement*, 63 Ohio St.2d 314, 408 N.E.2d 689 (Ohio 1980)

13. The Ohio Supreme Court's decision in *Peebles* relied upon a series of cases in the Supreme Court of the United States (SCOTUS) that focused on due process as related to prejudgment attachments of personal and real property. *See Peebles v. Clement*; *Snidach v. Family Finance Corp*, 395 U.S. 337 (1969); *Fuentes v. Shevin*, 407 U.S. 67 (1972), *Mitchell v. W.T. Grant Co.*, 416 U.S. 600 (1974); *North Georgia Finishing, Inc. v. Di-Chem, Inc.*, 419 U.S. 601 (1975); *Matthews v. Edridge*, 424 U.S. 319 (1976).

14. SCOTUS subsequently continued to extend its holdings regarding prejudicial seizures of real property to make it very clear that, absent "extraordinary circumstances," they violate due process. *Connecticut v. Doehr*, 501 US 1 - Supreme Court 1991; See also *United States v. James Daniel Good Real Property*, 510 U.S. 43 (1993)

15. The Ohio legislature was aware of these holdings by the Ohio and U.S. Supreme Courts and changed their general attachment law to comport with the Ohio Supreme Court's ruling in *Peebles*. *Compare* ORC 2715 before *Peebles* to current version; *See also Creditor's*

*Rights in Ohio: An Extensive Revision*, by Peggy M. Coleman et al, Akron Law Review, July 2015, Pgs. 487 – 515.

16. However, the Ohio legislature knowingly and purposely chose not to make any changes to the Condominium Act ("Act") to comport with even one of these requirements.

17. The Act does not require the UOA to furnish a bond or other security to compensate the Unit Owner in the event of a wrongful seizure.

18. The Act does not require that the affidavit to be filed include specific facts forming the basis for the prejudgment seizure.

19. The Act does not require a judicial officer pass upon the sufficiency of the facts alleged in the affidavit.

20. The Act does not provide for dissolution for the seizure upon the positing of a bond by the unit owner.

21. The Act does it provide for an immediate right of hearing to the defending Unit Owner, where the Association be required to prove that the seizure is warranted. §5311.18

22. Inapposite to these holdings, rather than afford due process procedures, in 2004 the Ohio legislature amended to the Act to proscribe Unit Owners' due process, reducing the availability for post-seizure remedies, that were previously available. [*Compare* §5311.18 (2002) to 5311.18 (current) (specifically (B)(6) which states: "In any foreclosure action, it is not a defense, set off, counterclaim, or crossclaim that the unit owners association has failed to provide the unit owner with any service, goods, work, or material, or failed in any other duty.")]

23. Additionally, where the Ohio legislators chose to change §5311.18, and other sections of the Act, to strengthen the position of the Association and weaken the position of the

Owners, the changes impair the obligations of the contract between the Owners and the Association. It greatly reduced Owners' ability to have direct and productive discussions with their Association's Board. It impairs Owners' abilities to negotiate a resolution including by means of withholding payment to force the Association's compliance their contractual and legal obligations. [3]

24. Ohio has had a Lis Pendens Statute on its books since 1953. ORC §2703.27

25. Ohio has a separate Homeowners' Association statute, which does not include a parallel section to 5211.18(B)(6).

26. Upon information and belief, the demographics of condominium owners, including gender, race, age, and financial income differs from the demographics of the average owner of a stand-alone home, where condominium owners skew higher for gender as female, skew higher in age groups for senior citizens, and skews higher for minorities.

27. §5311.18 permits condominium owners' associations to file a lien against a unit without prior notice and without a judicial hearing.

28. §5311.18 permits associations to file a lien without an affidavit of a person with first-hand-knowledge attesting to the accuracy or truthfulness of the debt owed.

---

[3] *See Bridgecreek Condominium Owners' Association v. Doris Robinson* 2021 Ohio 1042 (Ohio App. 2021) (where Ms. Robinson's association changed the nature of trash collection from individual unit owner's trash can collection, to having a common dumpster collection without a vote, and increased members' assessments to include the cost of the dumpster collection, and Ms. Robinson withheld the cost of the increase and was subsequently foreclosed on as a result.); *See also Paul Bridge v. Arbor Woods Condominium Owners' Association,* 21CV05152 (where under their Declaration, the Association was responsible for insuring and repairing garage doors for vandalism, but refused to pay for Mr. Bridge's door when it had been vandalized to no fault of his own. Rather than be able to withhold assessments as leverage and/or a set-off for the minimal cost of his garage door as anyone who was not a condominium owner might do, the Act required Mr. Bridge to hire an attorney and sue the Association. While Mr. Bridge won his case, the judge then failed to award Mr. Bridge attorney fees. Despite the fees being statutorily mandated under 5311.19, Mr. Bridge said the judge's position was that Ohio is an "American Rule" state and made Mr. Bridge carry his own costs. Mr. Bridge paid over four times the cost of his garage door in attorney fees.)

29. §5311.18 permits associations to file a lien without depositing any bond that might be awarded to a unit owner upon whose property was wrongfully seized.

30. §5311.18 does not identify a penalty for a wrongful lien against the association.

**PLAINTIFF-SPECIFIC FACTS**

31. Plaintiff, Linda Nouri owns a condominium unit located within the Arbor Woods Condominium development.

32. The Arbor Woods Condominium development is purportedly established pursuant to ORC §5311 by developer Hal Homes ("developer.")  To do this, Hal Homes formed a non-profit corporation – Arbor Woods Condominium Owners' Association, Inc. ("COA") – on September 17, 1997.

33. The COA admits in their governing instruments, including their Articles of Incorporation ("AOI") that as a non-profit corporation the COA is subject to ORC §1702.

34. The developer filed a "Declaration of Condominium Ownership" with the Hamilton County Recorder on September 22, 1998.

35. The COA is prohibited by its own Articles of Incorporation ("Articles") from taking any action or entering into any transaction or agreement in a manner which would violate any provision of Chapter 5311, its Articles of Incorporation, its Declaration, or its By-Laws.

36. Nevertheless, the COA violates its governing instruments frequently.

37. The COA's business is managed by a Board of Trustees pursuant to ORC 1702.

38. This Board of Trustees acts as the "Board of Managers" ("Board") defined in ORC 5311.

39. The governing documents include the Articles of Incorporation, the Declaration, and the Bylaws.  Despite being required by law to adhere to the COA's governing documents, the Board repeatedly fails to do this.

40. Approximately in May 2020, the Arbor Woods Condominium Board of Managers ("Board") unilaterally revoked all Unit Owner's electronic key-card access to the Recreational Facilities ("Facilities") and demanded that the Unit owners sign a waiver in exchange for regaining access to the Facilities. The Facilities are property that Unit Owners hold as tenants-in-common.

41. Ms. Nouri refused to sign the waiver and demanded access to the Facilities be returned to her. She attempted to engage in dialogue with the Board, Property Management Company, and the Association's legal counsel to come to a resolution on the matter. She reminded them that she owned the Facilities as a tenant-in-common and pointed out that what they were doing was criminal[4], but was stonewalled time and time again.

42. To mitigate her losses for damage to her Unit caused by the Association's malfeasance, and the set offs created by being ousted[5], Ms. Nouri revoked her permission for the automatic withdrawal from her bank account for COA assessments on June 1, 2020.

43. It is well established that Ohio law provides that an ousted tenant in common may recover from the tenant(s) in possession of the property for rents and profits. ORC 5307.21; *West v. Weyer*, 46 Ohio St. 66, 18 N.E. 537 (Ohio 1888); *Cohen v. Cohen*, 106 N.E.2d 77, 157 Ohio St. 503, 47 O.O. 363 (Ohio 1952); *William Modic v. Robert Modic* (Ohio App. 1993); *Sullinger v. Reed* (Ohio App. 2021).

---

[4] ORC 2913.43 prohibits causing a person to execute any writing by deception that disposes of or encumbers property, or by which a pecuniary obligation is incurred. Any person who does so is guilty of the crime "securing writings by deception." See also: ORC §§ 2913.02; 2911; 2913.01; 2913.01; 2923.02; 2905.03.

[5] See *Grimes v. Moreland*, 41 Ohio Misc. 69, 322 N.E. 2d 699, 70 O.O.2d 134 (Ohio Ct. Com. Pl. 1974) where places fencing on common area property was found to be an ouster in a condominium case.

44. CFL primarily serves as the COA's debt collection agency, but also has served in the capacity of 'legal counsel' providing legal advice on various subjects of interest to the COA.

45. On August 21, 2020 the COA by and through CFL filed a certificate of lien against Ms. Nouri's property. The lien claims that Ms. Nouri's "unpaid portion of assessments, late fees and administrative fees" were "$870.00 through August 31, 2020." And also indicated $350.00 owing for the filing and release of the lien.

46. Attorney Ferguson signed and filed the lien at the Hamilton County Recorder's Office: (1) even though the COA's Declaration requires that a lien be subscribed by the President of the COA; (2) despite not having first-hand knowledge of whether or not debts were owed to the Association; and with knowledge of Ms. Nouri's ouster.

47. The Hamilton County Recorder's office recorded the lien, encumbering Ms. Nouri's property.

48. On August 28, 2020, a letter was addressed to Ms. Nouri notifying her of the lien that had already been filed.

49. And despite claiming to be the COA's legal representatives, CFL directed Ms. Nouri to engage in dialogue with Towne Properties instead of themselves.

50. The Act has enabled property management companies and condominium association attorneys as debt collectors to act scrupulously to work in tandem to gouge condominium associations and their members for unwarranted and unnecessary attorneys' fees.

51. This is the practice that Towne Properties and CFL has engaged in acting as representatives/agents of Ms. Nouri's COA. These same entities also do this in a number of other associations throughout the city of Cincinnati.

52. Towne Properties and CFL have a long-standing relationship where CFL is funneled debt collection and legal work by Towne Properties. Their relationship has a long history where they sit on committees together, donate to one another's charities, and CFL has gone so far as to represent Towne Properties in legal matters in the past.[6]

53. Upon information and belief, CFL was involved in the drafting or in the alternative, in the enforcement of the waiver, which includes a clause that waives the ability of Unit Owners from filing claims against Towne Properties.[7]

54. Rather than make any phone calls or send any letters themselves on behalf of the COA, Towne Properties modus operandi for managing any payments they consider "late," is to immediately involve CFL as the 'debt collectors' to print out a form letter to the respective Unit Owner. CFL tacks on attorney's fees for this letter and tacks it onto the supposed debt owed by the Unit Owner.

55. These entities did this to Ms. Nouri, to other Unit Owners in Ms. Nouri's COA, and to Unit Owners in other associations involved with Towne Properties and CFL collectively.

56. Ms. Nouri has never to date been offered a hearing by the COA regarding this matter.

57. Because Ms. Nouri wanted to vote in her COA's elections, she wrote checks the sum of which were in excess of $5,000. These checks were not accepted by the property management company upon advice of their attorney.

58. The attorney indicated that the checks were refused because they did not meet the total financial obligation.

---

[6] Where this would be considered a conflict of interest and require disclosure and waiver the condominium associations, Ms. Nouri knows of no waiver signed by the COA to recognize and waive conflict of interest concerns.

[7] When Ms. Nouri called Attorney Ferguson, to discuss the situation with the waiver, Ms. Ferguson 'lawyered up' and had Attorney Conn, another partner in the firm communicate that Attorney Ferguson could not discuss whether or not she drafted the waiver due to "attorney-client privilege."

59. The lien has damaged Ms. Nouri's credit score, is hindering her from being able to refinance her mortgage with her bank, and clouding her title.

### FIRST CAUSE OF ACTION – SECTION 1983 DECLARATORY RELIEF

Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

Pursuant to 42 U.S.C. §1983, this claim for relief arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

An actual controversy exists between Ms. Nouri and the State of Ohio regarding her constitutionally protected right from being deprived of her "liberty or property without due process of law." U.S. CONST. amend. V, see also U.S. CONST. amend. XIV.

A §1983 claim must satisfy the following requirement: **(1)** a violation of a right protected by the United States Constitution, federal statute, or federal regulation **(2)** proximately caused **(3)** by the conduct of a "person" **(4)** who acted under color of law.

Ms. Nouri was **(1)** deprived of her right to procedural due process under the U.S. Constitution when **(2)** her property was seized by the filing and recording of a prejudicial lien. **(3)** Amy Schott Ferguson, Esq. presented this prejudicial lien the Hamilton County Recorder's Office. Then, the Hamilton County Recorder's officer endorsed, indexed, and recorded the lien on Ms. Nouri's property records **(4)** pursuant to Ohio's Condominium Property Statute O.R.C.

### SECOND CAUSE OF ACTION – DECLARATORY RELIEF

Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

Pursuant to 42 U.S.C. §1983, this claim for relief arises from the fact that provisions of §5311 are preempted by federal law, specifically the Fair Debt Collection Practices Act.

An actual controversy exists between Ms. Nouri and the State of Ohio regarding her constitutionally protected right from being deprived of her "liberty or property without due process of law." U.S. CONST. amend. V, see also U.S. CONST. amend. XIV.

A §1983 claim must satisfy the following requirement: **(1)** a violation of a right protected by the United States Constitution, federal statute, or federal regulation **(2)** proximately caused **(3)** by the conduct of a "person" **(4)** who acted under color of law.

Ms. Nouri was **(1)** deprived of her right to procedural due process under the U.S. Constitution when **(2)** her property was seized by the filing and recording of a prejudicial lien. **(3)** Amy Schott Ferguson, Esq. presented this prejudicial lien the Hamilton County Recorder's Office. Then, the Hamilton County Recorder's officer endorsed, indexed, and recorded the lien on Ms. Nouri's property records **(4)** pursuant to Ohio's Condominium Property Statute O.R.C.

§5311.18 permits condominium owners' associations to file a lien against a unit without prior notice and without a judicial hearing.

§5311.18 permits associations to file a lien without an affidavit of a person with first-hand-knowledge attesting to the accuracy or truthfulness of the debt owed.

§5311.18 permits associations to file a lien without depositing any bond that might be awarded to a unit owner upon whose property was wrongfully seized.

§5311.18 does not identify a penalty for a wrongful lien against the association.

## FIRST CAUSE OF ACTION – DECLARATORY RELIEF

Declaratory Relief Establishing the Unconstitutionality of 5311 For One or More of the Following Reasons: Violating Due Process, Unreasonable Seizure of Property, Impairing the Obligation of Contracts, Infringing on Equal Protection, and Violating Ohio's Separation of Powers Requirements

Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

This claim for relief arises under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution, Article IV of the Ohio Constitution, and 42 U.S.C. §1983.

An actual controversy exists between Ms. Nouri and the State of Ohio with regard to her constitutionally protected rights to Due Process and to her property being free from unreasonable seizure without due process of law or financial compensation.

Ms. Nouri is entitled to declaratory judgment establishing the unconstitutionality of O.R.C. §5311 both facially and as applied where:

(a) the State of Ohio deprived Ms. Nouri and other condominium owners similarly situated to her of full use and enjoyment of her home by enabling her condominium association and/or its representatives/agents to seize it through a prejudicial lien.

(b) the State of Ohio knowingly and intentionally deprived Ms. Nouri and other condominium owners of due process procedures that are afforded to members of homeowners' associations, and homeowners who do not participate in associations where they are afforded the opportunity to for affirmative defenses, counterclaims, and crossclaims based on the other party's breach of contract regarding failure to provide services, goods, work, materials, or failure in any other duty.

(c) The State of Ohio deprived Ms. Nouri of procedural due process rights by writing a statute that governs judicial procedure, they knowingly and intentionally violated Ohio Constitution. It has long been established that Article IV, Section 1, of the Ohio Constitution vests judicial powers of the state exclusively to the courts, and that Article IV, Section 5 vests the power to "prescribe the rules governing practice and procedure" in the Supreme Court.  Where

5311.18(6) is dictating procedure in violation to the rules of civil procedure, it is in conflict with those rules and "shall be of no further force or effect" because the rules of procedure allow for and even sometimes require counterclaims, crossclaims, and defenses.

## SECOND CAUSE OF ACTION – INJUNCTIVE RELIEF

For Injunctive Relief to Prevent the Continued Deprivation of Plaintiff's Constitutional Rights

Plaintiff incorporates and realleges the preceding paragraphs as though set forth at length in this cause of action.

Enforcement of 5311 constitutes an imminent and ongoing threat by the State of Ohio, acting by and through Defendants and Condominium Associations across the state to deprive Ms. Nouri and condominium Unit Owners of their civil rights and constitutionally protected property rights.

Ms. Nouri has suffered, is suffering, and will continue to suffer – and other condominium Unit Owners have suffered and will suffer – irreparable injuries if their due process rights in respects with their condominium properties continue to be violated, where Ms. Nouri and/or other condominium Unit Owners are deprived of procedural safeguards regarding prejudgment attachments/liens against their condominiums are put into effect to follow SCOTUS's safeguards or the Ohio Supreme Court's. Safeguards such as:

(a) Adequate prejudgment notice
(b) Requirements that an affidavit be filed alleging personal knowledge of specific facts forming a basis for seizure

(c) A requirement that a judicial officer pass upon the sufficiency of the facts alleged in the affidavit

(d) Requirement for an immediate meaningful adversarial hearing where the plaintiff must prove its burden to demonstrate that seizure is warranted and where the defendant may cross examine witnesses and provide evidence.

(e) Require the plaintiff to furnish an appropriate bond or other security to compensate a defendant in the event of wrongful seizure

(f) Provide for dissolution of the seizure upon the posting of a bond by defendant

(g) Provide for a means by which wrongful liens are not only extinguished, but they are also eliminated from the County's records.

The Act deprives Ms. Nouri, and others similarly situated, of the right to due process of law as guaranteed by the Fourteenth Amendment to the U.S. Constitution without a compelling state interest.

Pursuant to 28 U.S.C. § 2201, Ms. Nouri respectfully requests the Court to enter a declaratory judgment stating that the Act violates Ms. Nouri's rights and 42 U.S.C. § 1983 and enter a permanent injunction enjoining enforcement or application of prejudicial attachments/liens to condominium owners.

Additionally, Ms. Nouri respectfully requests the Court order Judge Nestor and Magistrate Berding provide a stay and/or postpone proceedings on the litigation between Arbor Woods Condominium Association and Ms. Nouri, pending a final decision regarding the merits of the constitutionality of the statute as related to 1) prejudgment seizures; 2) separation of powers as applied to 5311(6); 3) the impairment of the obligation of contracts by Ms. Nouri (and other similarly situation Unit Owners) because of the changes from the 2002 version of the

statute to the current version, any of which will have a significant impact on the outcome of the proceedings.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Linda A. Nouri prays the Court for an entry of judgment in her favor and against Defendants as follows:

1. A declaratory judgment, pursuant to 28 U.S.C. §2201 declaring the Act violates Ms. Nouri's (and other condominium owners') rights under the Fourth, Fifth, and Fourteenth Amendments to the United States Constitution.

2. A permanent injunction enjoining enforcement and implementation of prejudicial seizures on condominium property, by way of prejudgment attachment/liens.

3. A judgment awarding Plaintiff its damages and costs of suit, including reasonable attorneys' fees under 15 U.S.C. § 1117 and 42 U.S.C. § 1988; and

4. Any other relief to which Plaintiff may be entitled under justice and equity.

Respectfully Submitted,

/s/ Linda A. Nouri

Linda A. Nouri

*Pro Se* Plaintiff

L.Nouri.Law@gmail.com