IN THE UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION
CINCINNATI, OHIO

| | |
|---|---|
| **LINDA NOURI**, *Plaintiff*, vs. **ATTORNEY GENERAL YOST, et al.** *Defendants*. | Case No. 1:22-cv-00317 Judge: Jeffery P. Hopkins **OPPOSITION TO MOTIONS TO DISMISS** **HEARING REQUESTED** |

Linda A. Nouri, *pro se*, respectfully submits a memorandum in opposition to both Motions to Dismiss: **1)** filed by Defendant Ohio Attorney General David Yost ("AG"), and **2)** filed by Hamilton County Recorder Scott Crowley, Judge Terry Nestor, Magistrate Thomas Beridon, and Magistrate Anita Berding (collectively "County Defendants"), respectfully requesting this court DENY them both. Ms. Nouri's claims for prospective Declaratory and Injunctive relief are not barred by the Eleventh Amendment, this Court has jurisdiction. Ms. Nouri's pleading meets the Twombly plausibility standard. And Ms. Nouri is entitled to the legal relief she seeks; in fact it is imperative she gets it as quickly as possible. Ms. Nouri's legal arguments in support of her Opposition are set forth in the following attached Memorandum.

This Opposition is being filed after midnight of the 30th day, but before 7:00 am of the next day. Because this does not prejudice any parties involved, Ms. Nouri concurrently asks leave of the court to grant her an additional one day extension based on excusable neglect.

Respectfully Submitted,
/s/ Linda A. Nouri
Linda A. Nouri
*Pro Se* Plaintiff
L.Nouri.Law@gmail.com

**MEMORANDUM OF LAW**

**I. INTRODUCTION**

While this case arises from contractual disputes and criminal actions related to Ms. Nouri's condominium association, these disputes are not what is at the heart of this case. What is at the heart of this case is the flagrant disregard for the Constitution of the United States and the Constitution of Ohio and the rights they afford to the citizens of Ohio, namely Ms. Nouri.

Before May of 2020 it would have been inconceivable to Ms. Nouri how long the line of people who have sworn to uphold the Constitutions of the United States and of Ohio but turn a blind eye to decades of case law at both the State and Federal level. Governors, legislators, and district court judges all included. Sound farcical? Improbable? Implausible? Before May of 2020, Ms. Nouri would have said the same. But having lived it for the last two years, she is incensed with the deliberate indifference to this country's governing documents and the principles they represent by those who purport to uphold them.

Having absolute immunity seems to have left the Ohio Legislators feeling entitled to pick and choose which federal statutes and Supreme Court opinions they pay attention to. Their modus operandi seems to be "it is better to ask forgiveness than permission." When other states amended their statutes to align with SCOTUS's line of case law condemning prejudicial liens, the Ohio legislature changed nothing until they were faced with an opinion in the Ohio Supreme Ct that forced them to change. *Peebles v. Clement*, 63 Ohio St.2d 314. Then in direct contravention of *Peebles* and even more U.S. Supreme Court case law[1], the Ohio Legislators amended §5311 Ohio Condominium Law but rather than adding the enumerated requirements identified by the Ohio Supreme Court, instead it increased the owner's legal liability and

---

[1] *Connecticut v. Doehr*, 501 U.S. 1, 111 S.Ct. 2105 (1991) and progeny.

narrowed the owner's ability to seek relief to almost nonexistent. *Compare* holding in *Peebles* to ORC 5311.18.

To add insult to injury the Ohio Legislature also ignored the Separation of Powers Doctrine and the Ohio Supreme Court's holdings that the legislature is prohibited as per the Constitution from legislating court proceedings and procedures through 5311.18(B)(6) which are in direct contravention of the Ohio Rules of Civil Procedure. *Compare* Ohio Civ.R. 8(C), 13(A), 13(B) requiring affirmative defenses, compulsory counterclaims and permitting counterclaims, to 5311.18(B)(6) forbidding defenses, set offs, counterclaims or crossclaims if "the unit owners association has failed to provide the unit owner with any service, goods, work, or material, or failed in any other duty" (e.g. the association breached its contract).

The Ohio Legislature through their 2004 changes not only disregarded Due Process, but also ignored that 5311.18 (A)(2) is preempted by Congress's Commerce authority and the provisions in The Fair Debt Collection Practices Act (FDCPA) 15 USC 1692 *et seq*. Even a lay person can see that where 5311.18(A)(2) introduces a specific priority of payment regarding the multiple debts that may be owed by a condo owner, Congress through FDCPA requires that a debtor be permitted to determine the order and quantity the debtor wants to pay towards their multiple debts.

The Legislature disregarded the object of the Condominium statute, which is to protect the members of the organization. Their changes made it even easier for scrupulous people to prey upon the significant number of condo owners are widows on fixed incomes some of whom are Ms. Nouri's neighbors.

Ms. Nouri's purchased her condo in 2002, the Amendment made in 2004 altered the bargaining position between Ms. Nouri and her association, preventing her from safeguarding

her rights, and substantially impairing the obligations of the contract between Ms. Nouri and the Association. At the heart of this case is a statute written in direct contravention of decades of both United States and Ohio Supreme Court case law.

Ms. Nouri did, in fact stop paying her association fees. This was because the association's board members violated their contract and she is required by common law principles to mitigate her damages, not because at the time she lacked the means.

But instead of having discussions or conversations, the association was simply unresponsive. Under color of law Amy Schott Ferguson, Esq. (an officer of the court) filed a lien with the Hamilton County Recorder's office who accepted it and recorded it, seizing and encumbering Ms. Nouri's property, damaging her credit, and making it impossible to finish her post COVID mortgage refinancing. The bank will not amend her loan until the lien is removed.

Amy Schott Ferguson, Esq. always waits until the last minute to assert 5311.18(B)(6), racking up as many attorney fees along the way. And the Magistrates always rule in her favor no matter what the fact pattern, and the Hamilton County Judges have a habit of rubber stamping the Magistrate's Decision. *See Bridgecreek Condominium Assn., Inc. v. Robinson*, 2021-Ohio-1042.[2] Which is why Ms. Nouri is in the jurisdiction of this court, because it will expedite a decision on the constitutionality of the statute's provisions and keep Ms. Nouri from having to file foreclosure like so many other condominium owners in a similar situation.

Because the AG is the State's Chief Legal Officer whose duties in part include the oversight of the training of Ohio's legislative branch, providing advisory opinions to the legislature and to the executive branch, because his office openly admits having the enforcement

---

[2] Publicly accessible at: https://www.supremecourt.ohio.gov/rod/docs/pdf/1/2021/2021-Ohio-1042.pdf

authority of Ohio's consumer protection laws[3] which include §5311, because he is in the state official that would otherwise disseminate this court's rulings to employees of the state, and finally because his office has an interest in the proceedings participating defending the statute, AG Yost is appropriately named as a Defendant.[4]

Just as the prospective relief Ms. Nouri seeks from the AG does not bar suit, neither does the prospective relief Ms. Nouri seeks from the County Defendants.

## II. PROCEDURAL POSTURE

Ms. Nouri filed this case in the Eastern Division of the Southern District of Ohio on June 1, 2022.

The Court transferred the case to the Western Division on June 3, 2022.

The State and County Defendants filed Motions to Dismiss on July 14, 2023 and July 13, 2023 respectively.

The Court granted Ms. Nour a time extension, and Ms. Nouri filed an Amended Complaint on August 22, 2022.

The State and County Defendants each filed a Motion to Dismiss on September 6, 2022.

Ms. Nouri missed her filing deadline and the Court Ordered her to Show Cause or Reply on November 17, 2022.

On December 19, 2022, the Court filed an Order Granting Ms. Nouri a 30-day time extension to file a Reply.

---

[3] See the AG's website at: https://www.ohioattorneygeneral.gov/individuals-and-families/consumers/laws-protecting-consumers

[4] Should this Court find the AG too far removed from the case to be a defendant from which Ms. Nouri can seek relief, Ms. Nouri asks leave of the court to amend her pleading to include the Governor as he signs the bill into law and is a licensed attorney who should have known the changes to the statute were unconstitutional.

5

### III. LAW AND ARGUMENT

#### A. Standard of Review

Ms. Nouri agrees with the AG's Standard of Review offered.

#### B. The Federal District Court of Ohio Has Subject Matter Jurisdiction in This Case

#### 1. The AG Misreads Ms. Nouri's Complaint To Include Monetary Damages

The AG correctly reads that Ms. Nouri is specifically challenging the constitutionality of §5311.18. He also correctly understands that Ms. Nouri is brining a §1983 claim seeking a declaratory judgment and injunctive relief. Where the reading takes a dramatic wrong turn is his misunderstanding/misstatement that Ms. Nouri seeks "money damages." ECF 22, PGID 167, ¶1. This is just plain false.

Ms. Nouri has not asked for any monetary damages from any of the Defendants. She has not even included any fact that lists a single dollar amount. Ms. Nouri has only explicitly sought declaratory and injunctive relief. This is repeatedly explicitly stated throughout her Complaint including: in the Caption of both her original and amended pleadings[5], and stated in the section headings of her causes of action.[6]

Where Ms. Nouri asks for damages and costs of suit, including reasonable attorneys' Fees under 42 U.S.C. §1988, this is not equivalent to "money damages." The Supreme Court has held that the prevailing party's costs including attorneys' fees may be imposed upon a State. *Hutto v. Finney*, 437 U.S. 678, 696 (1978). Ms. Nouri is *pro se*, but at the time of filing intended to seek representation, therefore needed the placeholder statement.

---

[5] ECF 20, PGID 79
[6] ECF 20, PGID 93, 94, 96

**2. Ms. Nouri Only Seeks Prospective Relief, Which is Not Barred**

The AG proffers several cases including *Will v. Michigan Department of State Police*, 491 U.S. 58, 109 S.Ct. 2304, 105 L.Ed.2d 45 (1989) to support his proposition that Ms. Nouri's claims are barred by the Eleventh Amendment because as a State Officer he enjoys absolute immunity. ECF 22, PGID 167. *Will* does not support this proposition, it explicitly states the opposite.

It is true, the Court found for the Michigan Department of Police in *Will,* but this is because the Plaintiff sought retrospective relief. While not applicable to the facts in the case, the *Will* Court was still sure to distinguish between the analysis for retrospective and prospective relief. Footnote 10 in *Will*, the Supreme Court explicitly concluded "that a state official" – such as the Attorney General in this instant case – "in his or her official capacity, when sued for injunctive relief, would be a person under § 1983" and "prospective relief [is] not treated as an action against the State." *Will* at 71, Fn. 10 (quoting *Kentucky v. Graham,* 473 U.S., at 167, n. 14, 105 S.Ct., at 3106, n. 14; *Ex parte Young*, 209 U.S. 123, 159-160, 28 S.Ct. 441, 453-454, 52 L.Ed. 714 (1908).

The Court identified this distinction as "commonplace" in "sovereign immunity doctrine"[7] citing *Osborn v. Bank of United States, 9 Wheat*. 738 (1824); see also *In re Ayers*, 123 U. S. 443, 123 U. S. 506-507 (1887); *United States v. Lee*, 106 U. S. 196, 106 U. S. 219-222 (1882); *Board of Liquidation v. McComb*, 92 U. S. 531, 92 U. S. 541 (1876).

Because the case law on prospective relief against a state officer in his official capacity is *stare decisis*, and dates back almost to the inception of §1983, it is inexplicable why the AG offers it.

---

[7] *Id.*

Inexplicable, because even if the AG believed Ms. Nouri was asking for retrospective monetary damages, which she clearly is not, the inclusion of a claim barred by the Eleventh Amendment does not divest this district court of jurisdiction over the remaining claims. *See Henry v. Metropolitan Sewer Dist.*, 922 F.2d 332, 337, 339 (6th Cir. 1990). Courts don't throw out the baby with the bathwater.

**3. The State of Ohio and the Ohio Attorney General Have in Fact Waived Sovereign Immunity**

Sovereign Immunity was waived it immunity in three different ways:

**a)** Section 16, Article I, of the Ohio Constitution was amended in 1912 to state "suits may be brought against the state, in such courts and in such manner, as may be provided by law." ORC 2721.12 requires Ohio citizens serve the Ohio Attorney General with a complaint whenever an Ohio law is constitutionally challenged because he is an interested party. The statute provides in part: "the attorney general also shall be served with a copy of the complaint in the action or proceeding and **shall** be heard." ORC 2721.12 (A). The facial reading of the statute does not give either the plaintiff or the AG a choice, it requires a complaint be served and the AG to appear on behalf of the State[8].

**b)** The Ohio Attorney General on his own behalf, on behalf of the State, and on behalf of other State officials has in waived sovereign immunity by failing to assert it, and/or by failing to identify in pleadings that the failure to assert it was only narrowly tailored in previous Federal Court cases.[9] A recent example being *Preterm-Cleveland, et al., v. Ohio Attorney General Dave*

---

[8] The original Ohio Supreme Ct. caselaw Ms. Nouri read explicitly stated the AG must be made a party to the action. However, having had time to access additional cases, it appears at some point there was a change in the Statute and a change in the court's interpretation of requiring the AG be named as a defendant. However, if Ms. Nouri had only filed against the county defendants and served the AG's office with the complaint, the facial reading of the statute still does not give the AG a choice in making an appearance to defend the statute. Which again makes the AG's sovereign immunity argument disingenuous because he is required to implead in.

[9] It is Ms. Nouri's position based on limited research, that when defending claims in Federal Court, the AG's office only asserts a sovereign immunity defense against Pro Se litigants who likely do not have the financial means, the

*Yost*. The repeated waiver of sovereign immunity in Federal Court against various Plaintiffs confers a right to ALL Plaintiffs who have similarly situated cases or claims.

    **c)** Even if the AG had explicitly asserted a narrow waiver, the AG can not ad hoc pick 'favorite' Plaintiffs, gracing the federal court with its willingness to subject himself or other State Defendants to its power and authority. This would be in contravention of the agreement it undertook to gain statehood and an equal protection violation. *See Generally* The Northwest Ordinance and The Act of April 30, 1802 (i.e. "Ohio Enabling Act")

    **C. Ms. Nouri's Claims Survive Either Rule 12 Analyses**

    **1. Ms. Nouri's Claims Have ALREADY Passed Judicial Scrutiny and Survived**

Ms. Nouri filed this case in a different venue. The complaint was reviewed by the court that originally had jurisdiction over it. The Court in the Eastern District had the authority to dismiss this case *Sua Sponte*. The court has the authority to dismiss a case sua sponte and does so frequently in pro se §1983 cases. This did not happen.

Instead in the "interests of justice" the court transferred the case to the Western Division. Case: 1:22-cv-00317-MWM-KLL, Doc 2, PAGEID #:24. The interest in justice referred to is Ms. Nouri's.

    **2. Ms. Nouri's Claims Meet The Twombly Standard**

The County Defendants claim that Ms. Nouri's claims contain "unadorned, the-defendant-unlawfully-harmed-me accusation[s] supported by mere conclusory statements." Doc

---

clout with the press, or the legal prowess to understand the nuances in §1983 sovereign immunity to be able to argue against it. This in itself is a discriminatory practice that violates the Constitution. Ms. Nouri respectfully asks leave of the court to amend her claims against the AG after additional evidence is collected to demonstrate the plausibility of this claim.

21, PGID 103. First, if this was true, then the AG would also have argued this. He didn't. Second, if this was true, the original court would have dismissed the case. It didn't.[10]

Ms. Nouri concedes that her causes of action are misnumbered and that might muddy referencing her causes of action by number. Notwithstanding that, her causes of action identify every element required to be met and then provide corresponding facts that meet those elements of her cause of action. *See* Doc 20, PGID 93. This argument on the County Defendants' part is disingenuous.

### 3. County Defendants Filing Bolstered Ms. Nouri's Case

With all due respect, the County Defendant inexplicably miss the reason they are a party to the action. They are a party so that this court may assert jurisdiction over them for *prospective* relief. As related to the claims asserted the *Monell*[11] standard offered by the County Defendants does not apply to them. Ms. Nouri does not need to allege 'wrongs' done by the Judicial Defendants, they are there for prospective relief.

The County Defendants also bolstered Ms. Nouri's case when they offered ORC §317.13 asserting that the Recorder's office had "an affirmative duty to accept the lien offered for recording by the COA." DOC 21, PGID 105. Because they are in essence offering the Recorder's policy or custom, NOT the requirement by the statute which states in part: "The county recorder may refuse to record an instrument of writing presented for recording if the instrument is not required or authorized by the Revised Code to be recorded or the county recorder has reasonable cause to believe the instrument is materially false or fraudulent." ORC §317.13 (B). It offers an option for the Recorder to refuse the instrument. The Recorder's

---

[10] Ms. Nouri has not had the opportunity to research the Hamilton County Prosecutor's office filings to determine if this is rote argumentation that is included against only pro se plaintiffs, but asks leave of the court to amend her claims to add discrimination against *pro se* plaintiffs to her claims against the County.
[11] *Monell v. New York Dept. of Social Services*, 436 U.S. 658 (1978).

Office by their own admission has a custom not to refuse.  If this is the case, then this increases the likelihood of wrongful seizure of property under §5311.

With the litany of caselaw at their fingertips that say otherwise, the fact that three County Judges and two County Prosecutors fail to recognize a seizure of property without Due Process protections is in and of itself an injury should demonstrate to this court why Ms. Nouri has no other remedy but to seek relief here in this court's jurisdiction.

    Respectfully Submitted,
/s/ Linda A. Nouri
Linda A. Nouri
*Pro Se* Plaintiff
L.Nouri.Law@gmail.com

## **CERTIFICATE OF SERVICE**

I certify that a copy of the foregoing document was submitted for filing via the Court's electronic filing system on this 19th day of January , and that service of the foregoing was made via the Court's electronic filing system upon all counsel and parties registered for e-filing.

/s/ Linda A. Nouri
_____
LINDA A. NOURI
Plaintiff, Pro Se
4921 N. Arbor Woods Ct. #304
Cincinnati, OH 45248
(609) 353-6606
L.Nouri.Law@gmail.com